090209 Clemens Building Technologies v. Coday Counsel, you may proceed. Justices, Counsel, Peter Lorenz on behalf of Siemens Building Technologies. Justices, this case comes before you as both a mixed question of fact and law, a manifest case, and a case alleging error as a matter of law. I'll first deal with the allegation of manifest weight, and it goes as follows. The first is an argument made that there was a stipulation to accident relative to the back injury in this case. There was a stipulation relative to an injury to the knee in this case, which is not disputed, never has been disputed. When the accident occurred to the back is disputed, whether it occurred on 8-21-2001 when the claimant was lifting a pipe, or whether it manifested itself during a period of time when he was in physical therapy after surgery for repair of that knee, resulting in a torn meniscus. Counsel for claimant urges that having stipulated to accident, we stipulated to the accident having occurred to the back on the date of the injury of lifting the pipe. Nothing could be further from the truth. My reply brief cites specifically to an Illinois Supreme Court case, Bray, which puts that to rest. You may stipulate to accident, but that doesn't mean you stipulate to causal connection. This is the argument that never the twain shall meet between accident and causation, but always the case in manifest weight. Cases, these are important. Now, the allegation of violation, excuse me, of manifest weight results from four unrebutted statements from the claimant himself at hearing, upon which the treating physician relies, informing his causal connection opinion. The first has to do with, I felt a muscle in my back when I lifted the pipe on 8-21-2001. He did, in fact, testify to that at hearing. There's just nothing in the medical records to corroborate that at all. It is unrebutted. It's unfalsifiable, but it doesn't make it true. The next has to do with an unrebutted testimony from the claimant himself relative to the manifestation of the back injury. In physical therapy, while recovering in this prescribed course of care post-knee surgery, the statement is that he felt a blowout. Again, this is unrebutted, but it's unrebuttable and unfalsifiable, which does not make it true. But it's clear in a fair reading, actually, of the physical therapy records from that physical therapy facility, actually show that between six or seven times he complained of mild back pain, mild back pain, while riding on an exercise bicycle, approximately seven to nine months after the 8-21-2001 lifting episode in which he hurt his knee. The next unrebutted and unrebuttable, unfalsifiable, but not necessarily true statement made by the claimant that the treating physician accepted in forming his causal connection opinion relates to the purported statement by the claimant to the treating physician that he was released to return to work on 8-21-2002 because he wanted to go back to work. Because he wanted to go back to work. Again, unrebutted, but unrebuttable, but not necessarily a true statement. And in fact, belied by the records themselves. Belied by the records themselves and further belied by the fact that this particular patient of this particular treating physician underwent a physical therapy program at one facility where he did, in fact, feel some pain in his low back. Which physical therapy then was changed to another facility at the direction of the treating physician? Which, in further physical therapy records shows, seems to have come to baseline, did come to baseline, says the Section 12 examiner of respondent. He did undergo an FCE. He passed the FCE validly. And he was discharged from that purportedly with capabilities of very heavy lifting. Which was then ratified within a day or two by the treating physician. Supposedly, again, with the unrebutted and unrebuttable, but not necessarily true statement of the claimant that it all occurred because I wanted to go back to work. On a PRN basis, a PRN basis to return as needed, which does not necessarily mean causal connection. So you're saying there's no medical opinions in the records to support the causal connection? What about Dr. Lorenz? Dr. Lorenz supports it, but he relies on at least four. I've gone through three of them. Unrebutted and unrebuttable, but not necessarily true statements of the claimant himself. None of which are contemporaneously verified within the treating records as we go forward. They are in the record clearly when the claimant testified. They are in the record when Dr. Lorenz did testify at evidence deposition after he had performed surgery. But the only causal connection that exists, excuse me, contemporaneous with all of this, is a statement on the first or second visit of Dr. Lorenz on 5-9-2002, in which he said the back pain is related to the knee in the sense that it occurred as sequelae, that's my word, or as a natural consequence of the recovery from the knee. But he does not testify to causal connection as it relates to something purportedly happening to the back on 8-21-2001. He then makes what, sure. You're losing me. Did Lorenz note that he, the claimant had an exacerbation of his back pain to a point of seeking treatment for it while doing physical therapy for his knee rehabilitation? Did he say that? He did. He did. If that's the case, why isn't there a causal connection? He makes a causal connection statement. There's no question about that. But he makes a causal connection statement having admitted that he looked at no medical records whatsoever relative to the development of this low back condition. Should this low back pain develop as a result of something other than the rehabilitation of the knee? Well, there's the claim that it did. And in fact, the rehabilitation, I can read his causal connection statement. His causal connection statement, which is actually contained throughout his deposition in various places, but most importantly, on page 45 of his deposition, he hedges one way and yet another, which we argue is not a valid, but in fact flawed, causal connection statement. And what he says is, in response to my question, what is the particular inciting event causing the back pain? My suspicion, which I think is conjecture, argued was conjecture, is that it probably happened at the time he injured his meniscus. His meniscus was injured on 8-21-2001. He told me he had back pain from that point. He told me he didn't tell Silver Cross Hospital records he didn't look at or any other records until he began treating with Dr. Lorenz. He told me. But the knee was really bugging him, so he wanted that to be taken care of, so he had the knee taken care of. And then he goes on. And he says, and then he had another episode, an episode that happened in physical therapy. So that's the only one that I can testify to, which would appear to be a causal connection statement only as it relates to the condition occurring as sequelae in the physical therapy. But he doesn't leave sleeping dogs by. He goes further. And the next statement he makes in response to the very same question is, but his picture was that it was a kind that started back with the knee. So when did it happen? When did it happen? Kennedy. Would it make a difference? Carvin. Does it make a difference? It does make a difference because there's another leap that occurs right after he releases him to very heavy physical duty. And that is there's absolutely no treatment whatsoever for another seven month period of time. And we then have the third unrebutted and unrebuttable statement by the claimant himself. Only adhering years after the treatment occurred and the surgery occurred. And that is this. My back hurt me. I was in pain between 8-1-2001, excuse me, 2002. And when I returned to Dr. Lorenz on 2-20-2003, there's nothing in the record other than his statement. And there's nothing in the record upon which the causal connection statement was made from Dr. Lorenz except his admission. He looked at no other records and that he accepted by history this particular claimant's presentation, which is otherwise contradicted throughout the medical records, physical therapy, and treatment records throughout the entire course of care. The next error, and this causal connection statement is so internally contradictory and flawed, we urge that it be, that you find that it's against the manifest weight of the evidence. But what makes what would otherwise be just a manifest weight case more than a manifest weight case, but rather likewise an error of law, is what occurred with the stipulation sheets on these two consolidated cases. There's much discussion in the briefs relative to what was stipulated to and what wasn't. It can't really be disputed, however, by looking at arbitrators number one and number two, what was stipulated to. What the Commission then did by reversing the arbitrator is it completely disregarded its own rules in violation of this Court's ruling in Walker. In Walker, what this Court did was modify a TT award that the Commission had made that had originally been about approximately 116 weeks by the arbitrator, reduced to approximately 30 weeks by the Commission, to which this Court said, well, there's deference. Clearly, it's uniquely the province of the Industrial Commission, or the Workers' Compensation Commission, to find what the period of TT is. But what you're not free to do, Commission, is disregard your own rules. And what happened in this case is one of the parties came to the Commission and stipulated to a period of temporary total disability of 84 weeks. Sorry, party, you have to pay 84 weeks, was the ruling of this Commission. Otherwise, fundamental fairness, prejudice, the sui generis nature of the Commission itself is called into question in this circumstance. There's one thing I'd like to point out that this argument is not about, this appeal is not about. Having reread my brief this morning, I think it bears clarification. Certainly, in light of this Court's decision in Hostany as recently as a month ago, many of the bar recognized that Cook and the purported extra degree of scrutiny that should be allowed when there's a reversal of the arbitrator and the Commission was overruled long ago through a series of cases. The argument of Siemens is not that, in fact, there should be extra scrutiny in this case. Hostany put that to rest for good until there's some amendment in Springfield on that particular point. But what the Commission is not free to do, and what this Court said in Walkman it most definitely is not free to do, is disregard its own rules relative to stipulations and that the parties are bound by them when they come before the Commission. Otherwise, a body that is a fact finder, that is not bound by the decisions of the arbitrator, but does not hear these cases tabula rasa, must follow its own rules. It's clear that what was submitted at arbitration was nature and extent of injury, amongst others. A TT period was alleged on an application for adjustment of claim that is not the subject of this appeal. Could not be the subject of this appeal because it was not an award. The parties came to the Commission with certain issues. They were stipulated to for various reasons. That ruling ---- Kennedy, this case involves two consolidated cases with overlapping facts and issues. Does that bear on this at all? Even more so, it supports the implication of the rule itself. Commissioner Lindsey, in a case in Bartizek, which is not precedential here before this Commission because it was settled very quickly on contracts after her finding, dissented and said the fact that it's a consolidated case is not the important thing here. Counsel may argue when he gets up here that, come on, this counsel for employer must have known that there was an allegation of a TT period in these two consolidated cases. Well, yes, that's true. But a fair assessment of the record that we had before the case was tried may have made one party act in a different way than they otherwise would have acted. And even post-award of the arbitrator, even post-award of the arbitrator ---- Might have or did. Is there some prejudice here you're alleging? The prejudice that may be alleged merely by asking the question ought to answer the question it's saying. Between the decision of the arbitrator and the decision of the Commission, the parties, in light of this Court's ruling in Walker, might have decided to act differently. Might have decided that, in fact, they cannot, they cannot award temporary total disability on a claim that there was a stipulation for, to the detriment of the other one, failing proof, failing otherwise. The Commission's bound by its own rules and has to follow them. The error that's alleged as a matter of law results from both the flawed and internally inconsistent causal connection statement that resulted from the treating physician relying on these unrebutted statements. And when the parties came to arbitration, the actual submission of the matter, without reservation of Thomas rights, as the stipulation sheets were read back to the parties, as the stipulation sheets were filled out by the parties, and the decision by one of the parties to proceed to litigation, reserved the rest for room. I have a question, counsel. Claimants had a light-duty release period of April 20th through June 28th. Of which year? Of 04. What, if you can answer this, did Siemens have any light-duty work available during that period? Well, I can't answer that. I can't answer that. There's nothing in the record that the claimant actually sought light-duty except for between the period of 8-1-2002 and when he then commenced after the significant gap in lack of treatment with Dr. Lorenz again on 220-2003. Thanks. Thank you, counsel. Counsel, you may proceed. May it please the Court, Mr. Lorenz, Richard Alexie, on behalf of Mr. Cote. Initially, let me state that these cases were tried under Section 19B of the Workers' Compensation Act. Arbitrator Peterson had an off-the-record conversation, which obviously I can't talk about because that would be to horse the record, so I won't go there. However, having said that, what we're faced with this afternoon is a disgruntled respondent who says, I argued these facts before the arbitrator and I won. I argued these facts before the commission and I lost. I argued these facts before the circuit court and I lost. And now I come to you, gentlemen, and want to argue the same facts and have you step into the shoes of the fact-finder by, A, dealing with the credibility consequences of the statements which were characterized by Mr. Lorenz as unrebuttable and nonrefutable. I felt the pain. I did this. I did this. Implicit in Mr. Lorenz's argument, at least in my hearing, is the fact that he wants you to accept the notion that medical records are along, similar to holy writ. They must be accurate. They must be the arbiter of what's truth and what's not, even though the petitioner never, never laid his hand on any of those records. Counsel points out in his brief, and he alludes to it this afternoon in his argument, that he said, I felt the pull, but the emergency room record doesn't say anything about that. The fact of the matter is, this is a case of manifest weight. On a unanimous decision, three commissioners found that the arbitrator's conclusions were wrong. Yes, it was tried on a consolidated basis. Yes, there were two requests for hearing forms. And those requests for hearing forms, in fact, 1B, which is what the arbitrator characterized it, and counsel refers to it, specifically shows that I demanded compensation from the time he went back to see Dr. Lorenz in February until the date of the hearing. Counsel argued that very same situation to the commission, and the commission said, no. The evidence demonstrates that this man suffered an injury to his knee, and then the sequelae of that injury resulted in the need for further medical intervention with regard to his back. Dr. Zellbe in his deposition admits that certainly in his mind, there is no doubt that the problem with his knee and the limping that would result therein could have aggravated his spondylolisthesis, which would give rise to symptoms. But then magically, he testifies, but it went back to baseline. And in order to support that position, Dr. Zellbe said, well, it is unimaginable that Dr. Lorenz would have released him to return to work without reviewing and accepting the conclusions of the FCA. Dr. Lorenz testified, when the man came to me, he wanted to go back to work, I determined that he couldn't do any more structural damage, but I cautioned him, I told him he would probably have some pain, and I gave him medication. Under our statute, Section 8A rights remain open even when a person has reached MMI for an extended period of time, if you can prove that there is a nexus between that treatment and the original insult. Number two, our statute has a provision under Section 19H that allows 30 months, 60 months in the issue of an AP1, but 30 months to come back to the Commission and say, you know what, you decided this case, you made a finding, but the situation has changed. How would that circumstance be any different here? The analysis of the Commission, in its award, reversing the findings and modifying the findings of Arbitrator Peterson are well within the purview of the law, and there is no issue of law here. It is a question of who did they believe, whose opinion did they accept, how did they interpret those medical records. This should be affirmed. Thank you, gentlemen. Are there any questions? Thank you. Just a few observations limited to the argument. Any off-the-record conversation with the Arbitrator I wasn't part of, so I won't, and I'm certainly not a disgruntled respondent. I'm here arguing on behalf of my client, who relies on the same rules that the Commission is bound by, and he is as well. Squares can't become circles. This was not tried as a 19B. This was not tried as a 19B. There is nothing in this record indicating this was tried as a 19B. As a pro forma matter, as a regular practice at the Commission, stipulation sheets are read back to counsel. It's not solely a manifest weight issue when the Commission disregards its own rules. When it disregards its own rules and then relies on an inherently flawed, contradictory, causal connection statement that in and of itself relies on unrebutted and unrebuttable but not necessarily true statements of the claimant himself at hearing, not contemporaneous with the taking of medical records. If this case wasn't tried as a 19B, why did the Commission remand it back to the Arbitrator under Thomas? That's the only time they remanded. Well, that's true, except that the stipulations themselves clearly have no indication that there was a reservation of Thomas' rights in the case. Except the Commission remanded it. Well, I know that's what the Commission did. But the Commission disregarded its own rules is our argument relative to the stipulation sheets themselves and what was put into issue. The other is relative to medical, there is no spondylosis in this gentleman unless I missed something in the record. Clearly what Dr. Zellbeoff, excuse me, Dr. Lorenz operated on was an instability in the lumbar spine that did not exist objectively looking just at his medical records until after he did a discogram sometime in March of 2003. Approximately at that point, eight to nine months after he gave this individual a full duty return to work after passing an FCE that said he could lift over 100 to 125 pounds. I yield the balance of my time unless there's questions. I believe they're on. Thank you, counsel. Thank you for your arguments in this matter. If we take them under advisement, we're at this position.